(No. 79168.—

ARLIE J. REIN *et al.*, Appellants, v. DAVID A. NOYES & COMPANY *et al.*, Appellees.

*Opinion filed March 21, 1996.—Rehearing denied June 3, 1996.*

McMORROW, J., took no part.

Richard W. Husted, of Dundee, for appellants.

William J. Foote and David W. Schopp, of Dreyer, Foote, Streit, Furgason & Slocum, P.A., of Aurora, for appellees.

JUSTICE MILLER delivered the opinion of the court:

On March 17, 1993, plaintiffs, Arlie J. Rein, Brenda H. Rein, Robert H. Miller, Donald C. Miller, and Lorraine Fehrmann, filed a 12-count complaint in the circuit court of Kane County against defendants, David A. Noyes and Company (Noyes), a securities dealer, and its agents, John F. Rath and Ronald E. Ainsworth. The complaint alleged that defendants fraudulently misrepresented the character of certain securities that they had sold to plaintiffs in 1985. Plaintiffs sought recovery under various theories of law. The trial judge dismissed the complaint pursuant to section 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619 (West 1992)), finding that the claims were barred by the doctrine of *res judicata* and also by the applicable statutes of limitations. On appeal, the appellate court, with one justice dissenting, affirmed the dismissal of plaintiffs' complaint. 271 Ill. App. 3d 768. We granted plaintiffs' petition for leave to appeal (155 Ill. 2d R. 315(a)) and, for the reasons that follow, affirm the judgment of the appellate court.

## I. BACKGROUND

On October 11, 1990, the Reins and Millers filed an

eight-count complaint (Rein-Miller complaint) in the circuit court of Kane County against defendants, Noyes and Rath. The first four counts contained the Reins' causes of action, and the last four counts contained the Millers' causes of action. Counts I and V alleged that the Reins and Millers were customers of Noyes, and that during 1985, on the recommendation of Noyes, through Rath, the Reins and Millers purchased certain securities known as "City of Richmond, Indiana Economic Development Revenue Bonds" (Richmond bonds). The bonds were dated June 20, 1985. The complaint further alleged that Noyes and Rath willfully, fraudulently, and deceitfully failed to inform the Reins and Millers of, and concealed from them, material facts relating to the bonds in violation of sections 12(F) and 12(G) of the Illinois Securities Law of 1953 (Act) (Ill. Rev. Stat. 1989, ch. 121$^1$/$_2$, pars. 137.12(F), (G)). Specifically, the complaint maintained that Noyes and Rath caused the Reins and the Millers to believe that the bonds in question were governmental, municipal bonds for which the City of Richmond would be liable for payment of principal and interest. In actuality, however, the bonds were high-risk investments in a private hotel project for which the City of Richmond would not be liable for payment of principal or interest. The complaint therefore claimed that the Reins and the Millers were entitled to rescind the purchase of the securities pursuant to section 13 of the Act and recover the full amount paid for the securities plus interest (Ill. Rev. Stat. 1989, ch. 121$^1$/$_2$, par. 137.13(A)(1)). The complaint additionally alleged that the Reins and the Millers became aware of the fraudulent misrepresentation of the securities in August 1990.

The remaining counts of the complaint were all based on the same factual allegations as counts I and V. However, count II asserted that the Reins purchased the securities on October 30, 1985, while count VI al-

leged that the Millers purchased the securities on June 20, 1985. Counts II and VI of the complaint sought recovery under a theory of common law fraud and for failure to register the securities and provide a prospectus as required by the Act. Counts III and VII sought punitive damages based on common law fraud. Counts IV and VIII sought recovery on the theory of breach of fiduciary duty.

On December 27, 1990, Fehrmann filed a four-count complaint against Noyes and Ainsworth. Fehrmann's complaint was based on allegations similar to those contained in the Rein-Miller complaint. Specifically, Fehrmann's complaint alleged that during 1985, Noyes, through Ainsworth, willfully, fraudulently, and deceitfully induced her to purchase Richmond bonds, dated June 20, 1985. The first count of Fehrmann's complaint, styled "Count IX," sought rescission under the same theory as the Rein-Miller complaint and alleged that Fehrmann became aware of the fraudulent misrepresentation of the securities in November 1990. Count X asserted that the sale of the securities to Fehrmann occurred on October 29, 1985. In all respects, the legal basis of each of the four counts of Fehrmann's complaint was the same as that of the analogous counts of the Rein-Miller complaint. On defendants' motion, the rescission count of Fehrmann's complaint (count IX) was consolidated with the Rein-Miller complaint.

Defendants moved pursuant to section 2—619(a)(5) of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(5)) to dismiss the rescission counts of the complaints (counts I, V, and IX) on the ground that the claims were barred by the limitations period contained in section 13(D) of the Act (see Ill. Rev. Stat. 1989, ch. 121$\frac{1}{2}$, par. 137.13(D)). The trial judge subsequently granted defendants' motion and dismissed with prejudice the counts seeking rescission, finding that they were barred by the limitations period in section 13(D) of the Act.

Following the trial judge's order, plaintiffs filed a motion for reconsideration and a motion for leave to file an amended complaint. In the motion for leave to amend, plaintiffs sought leave to plead the doctrine of equitable estoppel, which plaintiffs contended overrode the statute of limitations bar. In the motion for reconsideration, plaintiffs argued, among other things, that the trial judge erred in determining that plaintiffs could not plead equitable estoppel in defending against defendants' statute of limitations argument. The trial judge denied the motions. With regard to the motion for leave to amend, the trial judge noted that any proposed amendment seeking to assert equitable estoppel as a defense would still invoke the provisions of the Act in order to seek rescission of the securities purchases. The trial judge found that equitable estoppel could not be used to override the statutory limitations period because the claims would still be controlled by the limitations period in section 13(D) of the Act. Consequently, the trial judge denied the motion pursuant to the earlier ruling that such claims were barred by the limitations provisions in section 13(D). The trial judge further refused to make a Rule 304(a) finding (155 Ill. 2d R. 304(a)) that there was no just reason to delay enforcement or appeal of the dismissal of the rescission counts.

On August 23, 1991, plaintiffs voluntarily dismissed the remaining counts of their complaints pursuant to section 2—1009(a) of the Code (Ill. Rev. Stat. 1991, ch. 110, par. 2—1009(a)). Plaintiffs then appealed the dismissal of the rescission counts. On appeal, the appellate court affirmed the dismissal, finding that the rescission counts were barred by the limitations period in section 13(D) of the Act. *Rein v. David A. Noyes & Co.*, 230 Ill. App. 3d 12 (1992). For purposes of clarity, this appellate court opinion and the proceedings leading up to it will be identified as *Rein I*.

On March 17, 1993, approximately 19 months after plaintiffs voluntarily dismissed the remaining counts of their complaints, plaintiffs filed a 12-count complaint against defendants. Counts I through IV contained the Reins' causes of action; counts V through VIII contained the Millers' causes of action; and counts IX through XII contained Fehrmann's causes of action. The present complaint was virtually identical to the complaints filed in 1990. Like the 1990 complaints, the present complaint alleged that plaintiffs purchased the Richmond bonds based on the recommendations and urging of defendants and that defendants fraudulently misrepresented the nature of these securities. The complaint again sought rescission of plaintiffs' securities purchases pursuant to section 13(A)(1) of the Act (counts IV, VIII, and XII). The complaint also again sought relief under the theories of common law fraud (counts I, V, and IX) and breach of fiduciary duty (counts III, VII, and XI), and sought punitive damages based on common law fraud (counts II, VI, and X) (common law counts). The only material differences between the present complaint and the 1990 complaints were that the rescission counts in the present complaint claimed that defendants were equitably estopped from raising limitations or repose periods contained in the Act as a bar to the action because it was defendants' conduct that prevented plaintiffs from learning the true nature of the securities until after the expiration of the limitations period. The three counts of common law fraud in the complaint also contained allegations that the action was brought within the limitations period based on the time in which plaintiffs discovered the fraud and that the existence of a fiduciary relationship between the parties tolled the running of the limitations statute.

Defendants thereafter filed a motion to dismiss the entire complaint pursuant to section 2—619 of the Code

(735 ILCS 5/2—619 (West 1992)). The trial judge subsequently granted defendants' motion, finding that both the rescission and the common law counts of plaintiffs' complaint were barred by the doctrine of *res judicata*. Moreover, the trial judge held that the rescission counts were also barred by the statute of limitations in section 13(D) of the Act and that the common law counts were barred by the five-year statute of limitations in section 13—205 of the Code (735 ILCS 5/13—205 (West 1992)). The trial judge further denied plaintiffs' motion to make the final judgment more specific. All other post-trial motions were denied.

On appeal, a divided appellate court affirmed the dismissal of plaintiffs' complaint. 271 Ill. App. 3d 768. For purposes of clarity, the appellate court's opinion here and the proceedings leading up to it will be designated as *Rein II*. On appeal, plaintiffs argued that *res judicata* did not bar the rescission counts because the issue in the present suit was whether the principle of equitable estoppel overrode the statute of limitations defense, while the issue in *Rein I* was whether the rescission counts were barred by section 13(D) of the Act. In rejecting plaintiffs' argument, the majority held that the doctrine of *res judicata* prohibits the relitigation not only of those issues which were actually raised in the first proceeding, but also any issues that might have been raised. 271 Ill. App. 3d at 771. The majority concluded that since the principle of equitable estoppel could have been raised in response to the statute of limitations defense advanced by defendants in *Rein I*, the rescission counts were properly dismissed as being barred by *res judicata*. 271 Ill. App. 3d at 771.

As to the common law counts, the majority concluded that these claims were based on the same set of operative facts as the rescission counts. Thus, the majority held that *res judicata* barred the litigation of the com-

mon law counts because they could have been decided in *Rein I*. Moreover, the majority determined that although plaintiffs asserted different theories of recovery, they had only a single cause of action because the same set of facts gave rise to both the rescission and the common law counts. Consequently, the majority concluded that plaintiffs violated the rule against claim-splitting by attempting to litigate the rescission and the common law counts in separate suits. In reaching this conclusion, the majority acknowledged the tension between the rule against splitting a cause of action and the language of section 2—1009 of the Code, which authorizes the refiling of an action, in whole or in part, within one year following a voluntary dismissal without prejudice. The majority concluded, however, that section 2—1009 was not intended to automatically immunize a plaintiff against the bar of *res judicata*, resulting from a final adjudication of the same claim prior to the refiling of the voluntarily dismissed counts. 271 Ill. App. 3d at 774. Accordingly, the appellate court affirmed the dismissal of plaintiffs' complaint.

The dissenting justice disagreed that the common law counts were barred by *res judicata*. The dissenting justice believed that neither *res judicata* nor the rule against claim-splitting applied where a cause of action, or a part thereof, was voluntarily dismissed pursuant to section 2—1009. By voluntarily dismissing a cause of action, in whole or in part, under section 2—1009, the dissenting justice asserted, there would have been no adjudication on the merits of the suit, or that portion of it, which had been voluntarily dismissed. Without such an adjudication, the dissenting justice believed, neither *res judicata* nor the rule against claim-splitting applied. 271 Ill. App. 3d at 776 (Rathje, J., dissenting). The dissenting justice further contended that neither *res judicata* nor the rule against claim-splitting applied in

the present case because defendants failed to object to the voluntary dismissal of the common law counts. The dissenting justice believed that the lack of an objection should be taken to mean that defendants acquiesced in plaintiffs' splitting their causes of action. We granted plaintiffs' petition for leave to appeal (155 Ill. 2d R. 315(a)) and, for the following reasons, affirm the judgment of the appellate court.

## II. DISCUSSION

### A. Rescission Counts

On appeal to this court, plaintiffs first contend that the appellate court erred in concluding that the rescission counts in *Rein II* were barred by *res judicata* because plaintiffs could have raised the principle of equitable estoppel in *Rein I*. Plaintiffs argue that they did raise the issue of equitable estoppel in response to defendants' statute of limitations defense before the trial judge in *Rein I*, as evidenced by their motions to reconsider and for leave to amend. Thus, plaintiffs contend that the appellate court's reasoning in affirming the trial judge's dismissal of the rescission counts is untenable. Plaintiffs also argue that *res judicata* could not bar the rescission counts because the dismissal of these counts pursuant to section 2—619 in *Rein I* was not an adjudication on the merits and therefore does not constitute a final judgment on the merits for purposes of *res judicata*.

The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action. *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 294 (1992); *Kinzer v. City of Chicago*, 128 Ill. 2d 437, 446 (1989). The doctrine extends not only to what was actually decided in the original ac--

tion, but also to matters which could have been decided in that suit. *Progressive Land,* 151 Ill. 2d at 294; see also *Elliott v. LRSL Enterprises, Inc.,* 226 Ill. App. 3d 724, 728 (1992). For the doctrine of *res judicata* to apply, three requirements must be met: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there was an identity of cause of action; and (3) there was an identity of parties or their privies. *Downing v. Chicago Transit Authority,* 162 Ill. 2d 70, 73-74 (1994).

The second and third requirements for *res judicata* are met with respect to the rescission counts, and their existence is not challenged here by plaintiffs. There is certainly an identity of causes of action since plaintiffs are suing defendants for rescission of their securities purchases in the present action based on the same facts that gave rise to the rescission counts in the 1990 complaints. Moreover, the parties in both actions are identical. Therefore, the second and third elements of *res judicata* are met.

Whether the first requirement for *res judicata* is met depends on whether the dismissal of the rescission counts in *Rein I* was a final judgment on the merits. The trial judge in *Rein I* dismissed the rescission counts with prejudice, pursuant to section 2—619(a)(5) of the Code, as being barred by the statute of limitations in section 13(D) of the Act. Supreme Court Rule 273 provides that, "[u]nless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits." 134 Ill. 2d R. 273. As this court has previously stated, Rule 273 applies only to an involuntary dismissal of an action, such as that which occurs when a motion to dismiss under section 2—615 or 2—619 of the

Code is granted. *Downing*, 162 Ill. 2d at 74-75. Therefore, under Rule 273, the trial judge's decision to grant defendants' motion to dismiss the rescission counts in *Rein I* based on the applicable statute of limitations is a final adjudication on the merits and operates as a final judgment on the merits for purposes of *res judicata*. See *Downing*, 162 Ill. 2d at 74-75.

Having met the requirements for *res judicata*, the final judgment in *Rein I* bars subsequent actions involving the same claims or demands by the same parties or their privies. The doctrine prohibits not only those matters which were actually litigated and resolved in the prior suit, but also any matter which might have been raised in that suit to defeat or sustain the claim or demand. *Housing Authority for La Salle County v. Young Men's Christian Ass'n*, 101 Ill. 2d 246, 251-52 (1984); see also *Barry v. Commonwealth Edison Co.*, 374 Ill. 473, 478 (1940); *Elliott*, 226 Ill. App. 3d at 728; *Thorleif Larsen & Son, Inc. v. PPG Industries, Inc.*, 177 Ill. App. 3d 656, 659 (1988).

While the record supports plaintiffs' argument that they did raise the issue of equitable estoppel before the trial judge in *Rein I*, as evidenced by their motions for reconsideration and for leave to amend, such an argument does not provide plaintiffs with any relief here. In denying plaintiffs' motion for reconsideration and for leave to amend, the trial judge in *Rein I* specifically rejected plaintiffs' argument that equitable estoppel overrides the statute of limitations defense. The trial judge's ruling on this particular issue was not appealed to the appellate court in *Rein I*. The issue of equitable estoppel was therefore raised and decided in *Rein I*, and under principles of *res judicata*, plaintiffs were prohibited from raising the same issue in *Rein II*. Consequently, the rescission counts were properly dismissed.

B. Common Law Counts

In *Rein I*, after the trial judge denied plaintiffs' mo-

tion for a Rule 304(a) finding, plaintiffs voluntarily dismissed the common law counts of their complaint, pursuant to section 2—1009 of the Code (735 ILCS 5/2—1009 (West 1992)), in order to appeal the dismissal of the rescission counts. Following the unsuccessful appeal to the appellate court of the dismissal of the rescission counts, plaintiffs contended that they had a right, by virtue of section 2—1009, to refile the common law counts. The trial court dismissed the common law counts as being barred by *res judicata* and the applicable statute of limitations. The appellate court affirmed. On appeal to this court, plaintiffs argue that because there was no final adjudication on the merits of the voluntarily dismissed common law counts, these counts are not barred by *res judicata*. Plaintiffs also argue that *res judicata* cannot bar the common law counts because there was no identity of causes of action between the suits. Plaintiffs maintain that for there to be an identity of causes of action between the two suits, the same evidence must be needed to support the ruling in the first action as is needed to sustain the judgment in the second. Plaintiffs argue that the evidence needed to sustain the first action concerned the statute of limitations relating to the rescission counts, not the facts relating to the underlying securities transactions. Since the common law counts involve the facts relating to the securities transaction, plaintiffs contend there is not an identity of causes of action between the first and second suits. For the reasons that follow, we reject both of plaintiffs' arguments.

As previously discussed, for *res judicata* to bar a subsequent action, three requirements must be met: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there was an identity of cause of action; and (3) there was an identity of parties or their privies. *Downing*, 162 Ill. 2d at 73-74. The

first element of *res judicata* is met here because the dismissal of the rescission counts with prejudice in *Rein I* operates as an adjudication on the merits for purposes of *res judicata*, as explained earlier. Although there was not an adjudication on the merits of the common law counts in *Rein I*, the concept of *res judicata* is broader than plaintiffs suggest. If the three elements necessary to invoke *res judicata* are present, *res judicata* will bar not only every matter that was actually determined in the first suit, but also every matter that might have been raised and determined in that suit. *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill. 2d 484, 490 (1993). Therefore, if the three requirements of *res judicata* are met and the common law counts could have been determined in *Rein I*, plaintiffs will be barred from litigating the common law counts in *Rein II*.

The third element of *res judicata* is also met here, as there is obviously an identity of parties in both suits. The key question here is whether the second essential element for *res judicata* has been met—whether there was an identity of causes of action in the first and second suits.

A cause of action is defined by the facts which give a plaintiff a right to relief. *Progressive Land*, 151 Ill. 2d at 295. As this court recently stated:

> "While one group of facts may give rise to a number of different theories of recovery, there remains only a single cause of action. 'If the same facts are essential to the maintenance of both proceedings or the same evidence is needed to sustain both, then there is identity between the allegedly different causes of action asserted and *res judicata* bars the latter action.' " *Progressive Land*, 151 Ill. 2d at 295, quoting *Morris v. Union Oil Co.*, 96 Ill. App. 3d 148, 157 (1981).

See also *Torcasso*, 157 Ill. 2d at 491.

Therefore, to determine whether there is an identity of causes of action between the first and second suits, we must look to the facts that give rise to plaintiffs'

right to relief, not simply to the facts which support the judgment in the first action, as plaintiffs contend. The causes of action in the two suits were substantially identical. The 1990 complaints and the present complaint raise the same theories of recovery. Moreover, there is a single set of operative facts common to both suits—that defendants fraudulently misrepresented the nature of certain securities they sold to plaintiffs in 1985. Since the same set of facts is necessary for the maintenance and proof in both cases, the causes of action are identical for purposes of *res judicata*. See *Progressive Land*, 151 Ill. 2d at 296. The requirements for *res judicata* are therefore met. Consequently, the judgment in *Rein I* is an absolute bar to subsequent actions involving the same claims or demands by the same parties or their privies. *Torcasso*, 157 Ill. 2d at 490; *Progressive Land*, 151 Ill. 2d at 294. As previously noted, where there is identity of parties, subject matter, and cause of action, *res judicata* extends not only to every matter that was actually determined in the prior suit, but to every other matter that might have been raised and determined in it. *Torcasso*, 157 Ill. 2d at 490.

Because the common law counts arise out of the same set of operative facts as the rescission counts, plaintiffs could have litigated and resolved these claims in *Rein I*. Having failed to do so, plaintiffs are barred by the doctrine of *res judicata* from attempting to raise and litigate them in *Rein II*, even though there was no adjudication on the merits of these claims in the prior suit. See Restatement (Second) of Judgments § 24 (1982).

The principle that *res judicata* prohibits a party from later seeking relief on the basis of issues which might have been raised in the prior action also prevents a litigant from splitting a single cause of action into more than one proceeding. Plaintiffs' quandary here arises from their decision to split their lawsuit into sep-

arate actions by dismissing the common law counts of their complaints, while attempting to litigate the rescission counts in *Rein I*, and then refiling both the common law and rescission counts in *Rein II*. Although the same set of facts gives rise to various theories of recovery, plaintiffs had only one cause of action. *Torcasso*, 157 Ill. 2d at 491. As a matter of public policy, however, plaintiffs generally are not permitted to split their causes of action. The rule against claim-splitting, which is an aspect of the law of preclusion, prohibits a plaintiff from suing for part of a claim in one action and then suing for the remainder in another action. See *Baird & Warner, Inc. v. Addison Industrial Park, Inc.*, 70 Ill. App. 3d 59, 63-64 (1979); *Radosta v. Chrysler Corp.*, 110 Ill. App. 3d 1066, 1068 (1982); *Thorleif Larsen & Son, Inc. v. PPG Industries, Inc.*, 177 Ill. App. 3d 656, 662 (1982); *Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.*, 189 Ill. App. 3d 638, 657 (1989). This rule is founded on the premise that litigation should have an end and that no person should be unnecessarily harassed with a multiplicity of lawsuits. *Radosta*, 110 Ill. App. 3d at 1069. Therefore, plaintiffs' claims resulting from the sale of the Richmond bonds could not be divided. Thus, following the final adjudication of the rescission counts in *Rein I*, plaintiffs were barred from litigating the common law counts in a subsequent action. To avoid the bar of *res judicata*, plaintiffs could have proceeded to a decision on the merits of the common law counts in *Rein I* and, if unsuccessful, appealed both the result regarding the common law counts and the trial judge's order dismissing the rescission counts with prejudice. By failing to proceed on the common law counts in the first action, plaintiffs are barred from attempting to litigate those issues in a subsequent suit. See Restatement (Second) of Judgments § 24 (1982).

Plaintiffs argue, however, that even if their claims

are technically barred by the rule against claim-splitting, the rule should be relaxed here. Plaintiffs contend that it would be inequitable to apply the rule in the present case because they dismissed the common law counts of their complaints to appeal the dismissal of the rescission counts. The rule against claim-splitting has been relaxed where there has been an omission due to ignorance, mistake or fraud, or where it would be inequitable to apply the rule. *Thorleif*, 177 Ill. App. 3d at 662; see also *Adams v. Pearson*, 411 Ill. 431, 440-42 (1952); *People v. Somerville*, 42 Ill. 2d 1, 4 (1969). Situations in which it would be inequitable to apply the rule are detailed in section 26(1) of the Restatement (Second) of Judgments (Restatement (Second) of Judgments § 26(1) (1980)). This section provides that the rule against claim-splitting does not apply to bar an independent claim of part of the same cause of action if: (1) the parties have agreed in terms or in effect that plaintiff may split his claim or the defendant has acquiesced therein; (2) the court in the first action expressly reserved the plaintiff's right to maintain the second action; (3) the plaintiff was unable to obtain relief on his claim because of a restriction on the subject-matter jurisdiction of the court in the first action; (4) the judgment in the first action was plainly inconsistent with the equitable implementation of a statutory scheme; (5) the case involves a continuing or recurrent wrong; or (6) it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason. Restatement (Second) of Judgments § 26(1) (1980); see also *Airtite v. DPR Ltd. Partnership*, 265 Ill. App. 3d 214, 219 (1994); *Thorleif*, 177 Ill. App. 3d at 661-62.

Nothing in the record indicates that any of these exceptions apply to the present case. The record is devoid of any allegations of ignorance, mistake, or fraud

in refiling the common law counts in *Rein II*. Further, defendants did not stipulate or agree to plaintiffs' refiling of the common law counts. Moreover, the fact that defendants failed to object to plaintiffs' voluntarily dismissing the common law counts cannot be equated with defendants' acquiescing to plaintiffs' refiling of these counts. Until plaintiffs attempted to refile the common law counts, no reason existed for defendants to object. Defendants made a timely objection to the plaintiffs' refiling of the common law counts at the appropriate time—when plaintiffs attempted to refile the common law counts. See 1 Am. Jur. 2d *Actions* § 113 (1994); *cf. Thorleif*, 177 Ill. App. 3d at 662-63. Moreover, the trial judge's granting plaintiffs' motion to voluntarily dismiss the common law counts without prejudice under section 2—1009 should not be interpreted as immunizing plaintiffs against defenses defendants may raise when the voluntarily dismissed counts were refiled. Further, we do not believe that the policies favoring preclusion are overcome in this case, or that the application of the doctrine of *res judicata* here produces an inequitable result.

Plaintiffs further argue that barring the common law counts violates the express language of sections 2—1009 and 13—217. Plaintiffs maintain that these sections give them the absolute right to refile the voluntarily dismissed common law counts within one year after the voluntary dismissal or within the remaining period of limitations.

Although the language of these sections appears to support plaintiffs' contention (see *Gendek v. Jehangir*, 119 Ill. 2d 338 (1988); see also *Tuch v. McMillen*, 167 Ill. App. 3d 747, 750 (1988)), we do not believe that these sections should be read to automatically immunize a plaintiff against the bar of *res judicata* or other legitimate defenses a defendant may assert in response to the

refiling of voluntarily dismissed counts. If plaintiffs were permitted to proceed on their common law counts, any plaintiff could file an action with multiple counts, dismiss some but not all of the counts, obtain a final judgment on the undismissed counts, and if unsuccessful on the counts not dismissed, refile the previously dismissed counts. Such a practice would impair judicial economy and would effectively defeat the public policy underlying *res judicata*, which is to protect the defendant from harassment and the public from multiple litigation. Moreover, an interpretation contrary to that reached here would emasculate Rule 304(a) by allowing a plaintiff to circumvent a trial judge's denial of a Rule 304(a) certification by refiling previously dismissed counts following an unsuccessful judgment or appeal on counts not previously dismissed.

Plaintiffs also argue that their claims were timely filed. They contend that their actions were filed within five years of the date they discovered their injuries and, therefore, their actions were filed within the applicable limitations periods. Plaintiffs further argue that the appellate court in *Rein II* should have held that the common law counts were timely filed, rather than deciding the appeal solely on the basis of *res judicata*. Because we have already determined that the rescission and the common law counts were properly dismissed as being barred by *res judicata*, we need not address these arguments. Moreover, to the extent that plaintiffs argue that the appellate decision in *Rein I* was wrongly decided, we note that such decision is not before us, and we therefore do not address these arguments.

### C. Section 2—619 Motion

Finally, plaintiffs argue that the trial judge erred in granting defendants' section 2—619 motion to dismiss because defendants failed to support their motion with affidavits or evidence. Because plaintiffs contend that

defendants failed to offer any affidavits or evidence in support of their motion, they argue that the only option under section 2—619(c) was for the trial judge to deny the motion since plaintiffs had filed a jury demand.

Section 2—619(c) provides:

"If, upon the hearing of the motion, the opposite party presents affidavits or other proof denying the facts alleged or establishing facts obviating the grounds of defect, the court may hear and determine the same and may grant or deny the motion. If a material and genuine disputed question of facts is raised the court may decide the motion upon the affidavits and evidence offered by the parties, or may deny the motion without prejudice to the right to raise the subject matter of the motion by answer and shall so deny it if the action is one in which a party is entitled to a trial by jury and a jury demand has been filed by the opposite party in apt time." 735 ILCS 5/2—619(c) (West 1992).

Plaintiffs' assertion that defendants did not provide the trial judge with any affidavits or evidence on which the judge could decide the motion is simply inaccurate. Defendants' motion to dismiss was supported by approximately 63 pages of attached exhibits, including the 1990 complaints, the trial judge's orders in *Rein I,* plaintiffs' motions for voluntary dismissal of their common law counts, and plaintiffs' motions for reconsideration and for leave to amend. Based on these exhibits, the trial judge had ample evidence on which to decide the motion, and consequently, we reject plaintiffs' argument.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the appellate court.

*Affirmed.*

JUSTICE McMORROW took no part in the consideration or decision of this case.